IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO. 1:98-cr-00019-MP-AK

RONALD ALLAN COHEN,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is once again before the Court on Doc. 1421, Defendant's Motion to Vacate under 28 U.S.C. § 2255. Previously, the Court recommended that the Government's motion to dismiss be denied on timeliness grounds but that Ground One be dismissed and Ground Two be remanded for further proceedings. Doc. 1442. The Court adopted the Report and Recommendation. Doc. 1444. The Government was again ordered to respond, and it has complied with that order. Doc. 1448. Defendant has filed his reply, Doc. 1453, and thus, this case is in a posture for decision. Having carefully considered the matter, the Court recommends that Ground Two of the motion to vacate be denied.

## BACKGROUND

Defendant Cohen pled guilty to conspiracy to launder money on January 21, 1999. In the Plea and Cooperation Agreement, Defendant was advised that he faced "a maximum possible penalty of 20 years," Doc. 199, which the Court reiterated at the plea hearing:

> THE COURT:    The maximum sentence that could be imposed upon your plea of guilty, Mr. Cohen, is 20 years imprisonment....
>
> There is no minimum mandatory sentence prescribed by law for this offense. But, do you understand, sir, that you do face a maximum of 20 years imprisonment if your guilty plea is accepted by the Court?
>
> THE DEFENDANT:  Yes, Your Honor.

Doc.206 at 17-18. Defendant was a licensed attorney in the State of Georgia.

In setting forth the factual basis for the plea, the Government advised that Defendant's association with the money laundering conspiracy began in August, 1995, when he set up an office in Coolidge, Georgia, and hired a secretary to handle the daily transactions and correspondence. *Id*. at 12-13. "In actuality, Mr. Cohen had very little contact with the group's operations in the Coolidge location." *Id*. at 13. Instead, Defendant instructed the secretary to "take orders from Larry Sangaree...." *Id*. The secretary "issued form letters over Cohen's machine-generated signature verifying for individual victims that millions of dollars were available to cover their transactions." *Id*. Defendant continued to allow the secretary to "operate the business using his name and signature at Sangaree's direction even after Larry Sangaree was incarcerated in February of 1997." *Id*. at 13-14.

In 1996, Defendant discontinued his role as the escrow agent for the group, but he retained signature authority over the escrow accounts to which clients sent funds. *Id*. This pattern continued without significant change until early 1997. "Although Mr. Cohen did not personally participate in transactions involving clients," some did contact him, but most were referred to Larry Sangaree, who, with Defendant's knowledge, advised the victims that he was an associate of Defendant's "who could take care of the problem." *Id*. at 14-15.

Defendant was present and briefly detained when United States Customs personnel arrested Sangaree in February, 1997. *Id*. at 15. Several months later, Defendant approved two internal transfers from a Caribbean bank, thereby moving "funds which had been obtained from victims from the bank's general escrow account to Mr. Cohen's personal...account." *Id*. at 15-16. "This movement of funds accomplished at the direction of Larry Sangaree, was done to ensure that Sangaree, who had been arrested and was in jail, retained control of the money through Cohen at a time when it appeared that the bank funds may be frozen by the Antiguan government." *Id*. at 16. The assets were in fact seized by the Antiguan government, and Defendant then contacted an Antiguan attorney in an attempt to have the funds released. *Id*. At that time, Defendant identified accounts which belonged to him, Sangaree, and others over which he had full power of attorney and stated that the "funds in each account have been acquired legally and are free of encumbrances." *Id*. In fact, Defendant knew that Sangaree and others had been arrested on money laundering charges. *Id*.

During the time that Defendant was directly involved with the group, at least 38 transactions were handled through his Coolidge office, resulting in the loss of approximately $6,028,090.00 to various victims. *Id*. at 16-17. Of this amount, Defendant received fees of only $109,000.00. *Id*. at 17.

At the end of this recitation, Defendant agreed that these facts were "true and correct." *Id*.

Defendant's sentencing was originally continued indefinitely to allow Defendant the opportunity to continue his cooperation with the Government. Docs. 289 & 290. In December, 2000, counsel for Defendant, Samuel S. Jacobson, submitted a lengthy sentencing memorandum

which summarized Defendant's involvement in the money laundering conspiracy as follows:

> Cohen did not knowingly and willingly defraud any victim of the scheme underlying this case. Throughout his period as escrow agent he thought the scheme was a legitimate business operation. He continued to believe it was legitimate until it collapsed. Had things ended at that point he would have been without criminal guilt.
>
> After collapse of the scheme, however, he wrongly assisted other persons in July-August, 1997 in attempting to have bank accounts in Antigua released from an Antiguan government freeze. He acknowledges that his action was wrongful and constituted joinder in the conspiracy charged in the indictment against him. He otherwise denies any criminality. Until the collapse of the underlying scheme he was as much duped as the other victims.
>
> Cohen does not believe he should be sentenced under the money laundering guidelines. If he is, he believes he should receive a substantial downward departure....

Doc. 812 at 1-2.

More particularly, Defendant argued that he should not be held responsible for any monetary loss, but at most, "he could only be responsible for the funds he unsuccessfully attempted to transfer"; therefore, the "PSR's eight level increase in offense level for laundering in excess of $6,000,000 accordingly should be disregarded." *Id*. at 17-18. He also argued that he should not be sentenced under the money laundering guidelines but under the fraud guidelines and that a downward departure was in order. *Id*. at 19-25. He later filed a supplemental sentencing memorandum which more specifically objected to paragraphs in the PSR and separately requested a downward departure. Docs. 987 & 988.

On April 24-25, 2001, the Court conducted a lengthy sentencing hearing. Docs. 1041 &

1046.[1]  On April 25, Defendant was sentenced to 121 months imprisonment.  Doc. 999. Defendant appealed, arguing that the Court :  (1) used an improper base offense level, (2) imposed an improper eight-level offense enhancement for laundering proceeds in excess of six million dollars, a two-level enhancement for specialized skill, and a two-level enhancement for obstruction of justice, and (3) improperly denied a reduction for mitigating role.  Doc. 1331 at 2.  The Eleventh Circuit rejected these arguments and affirmed the judgment.  *Id*.  Defendant's petition for writ of certiorari was denied.  *See Cohen v. United States*, 540 U.S. 821 (2003).

The instant motion ensued.  Doc. 1421.

## DISCUSSION

The only remaining issue for the Court's consideration involves questions of counsel's effectiveness, and thus, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.  The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice.  *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual

---

[1] A "Partial Transcript of Second Day of Motions and Sentencing" is also a part of the record.  Doc. 1001.

support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a

reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

1. Failure timely to address, either by motion to dismiss or otherwise, "ambiguous language" in Count One, which resulted in base offense level of 23, rather than 20, and to file objections to PSR.

The allegation that counsel failed timely to file objections to the Presentence Report is plainly frivoulous. Counsel filed a lengthy sentencing memorandum, a supplemental sentencing memorandum, objections to the PSR, and a motion for downward departure. Each was considered by the Court, and there is nothing in the record even to suggest that the Court did not entertain the arguments or objections merely because some of them were not made or elaborated

upon until shortly before sentencing. While Defendant may believe that an earlier challenge to the PSR would have afforded him a "much better chance of dissuading the government from the position it ultimately assumed," Doc. 1453, he presents nothing to support this bald argument. Indeed, it is belied by the fact that the Government continued in its positions all the way through appeal, and thus, it does not appear that the Government's additional reflection on Defendant's arguments changed its mind in the least.

Furthermore, counsel did in fact file a motion to dismiss, arguing, in part, that the allegations of Count One were vague, indefinite, and indistinct and failed to "identify with any specificity any substantive offense(s) or object(s) underlying the alleged conspiracy." Doc. 45. Mr. Jacobson also argued that Count One failed to allege "willfulness, knowledge, or intent to conduct financial transactions and/or to cause financial transactions to be conducted representing or involving some form of unlawful activity or the proceeds of some form of unlawful activity." *Id*. Counsel also sought a bill of particulars, requesting, *inter alia*, a "particularization of the funds alleged to have been involved in each financial transaction alleged in Count One, specifying the amount of such funds and the location thereof," and a "particularization of each instance of wire fraud constituting the 'specified unlawful activity' alleged in Count One, specifying each such wire usage, the parties thereto, and the respect in which the wire usage was allegedly fraudulent." Doc. 44. At the sentencing hearing, counsel argued vigorously for the use of the lower base offense level and was overruled.

Additionally, even if counsel had more specifically argued for the dismissal of the indictment because it failed to identify the particular subsection of 18 U.S.C. § 1956 which Defendant allegedly violated, as the Eleventh Circuit noted, the omission was "neither grounds

for dismissal of the indictment nor a basis for reversal of his conviction," and thus, there is not a reasonable probability that the outcome of the proceedings would have been different.

        2.        Failure to address amount of loss attributable to Defendant.

This claim is also without merit. The Eleventh Circuit found that the Court "did not err in finding that Cohen was responsible for over $6,000,000 in losses and in enhancing his base level offense level by 8 levels...." Thus, even if counsel had directly made the argument now advanced by Defendant, the outcome of the sentencing would not have been different, as there was, as the appellate court found, factual support for the $6,000,000 figure.

        3.        Failure to seek motion for downward departure based on extensive cooperation.

In this ground, Defendant charges that when "it became somewhat apparent that the government was wavering on filing a motion setting forth Cohen's substantial assistance in the prosecution of others, the defense should have taken steps to avoid a non-filing." Doc. 1421, Mem. at 10. This claim is without merit. The Plea Agreement in this case plainly left the issue of substantial assistance solely to the discretion of the Government. In that situation, the Government breaches the plea agreement only if its refusal to file a substantial assistance motion is based on an unconstitutional motive, such as, race or religion, or is not rationally related to any legitimate government end. *Wade v. United States*, 504 U.S. 181, 185-86 (1992). Thus, the Government could not be forced to file a substantial assistance motion without proof that its refusal was based on an improper reason.

The issue was fully explored at sentencing, *see*, *e.g.*, Doc. 1046 at 54-58 & 100-103, and rejected by the Court, and thus, Defendant's argument that counsel took no action "to ensure a downward departure was at least seriously considered by the court" is factually baseless, as there

was nothing else counsel could have done or argued to force the Government's hand on the matter.

      4.      Failure to file timely objections to PSR and revised PSR.

Even if counsel did not "timely" file objections in this case, as previously recognized, this alleged failure did not prejudice Defendant in the slightest, as his objections were fully considered and ruled upon.

      5.      Failure properly to address issue of obstruction of justice.

Again, this issue was raised by counsel before sentencing, and it was considered at the sentencing hearing and on appeal. The argument was rejected on its merits on appeal, the court finding no error in the enhancement. Counsel made the arguments against the obstruction of justice enhancement, and he cannot be faulted for failing to prevail on an issue that had no merit.

      6.      Failure properly to advise Defendant as to length of sentence.

In his supporting memorandum, Defendant charges that his counsel misled him regarding the length of his potential sentencing exposure. This argument is flatly belied by the Plea Agreement, which Defendant, an attorney, signed, and his unhesitating acknowledgment during the plea colloquy that he faced a maximum sentence of twenty years. The law is well established that a "guilty plea means something. It is not an invitation to a continuing litigation dialogue between a criminal defendant and the court." *Murray v. United States*, 145 F.3d 1249, 1254 (11th Cir. 1998). In fact,

> the representations of the defendant, his lawyer, and the prosecutor at...a [plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal,

as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Defendant's suggestion that his attorney misrepresented his sentencing exposure is a contention which, in this Court's opinion, is wholly incredible given Defendant's sworn statements at the plea hearing.

In light of the foregoing, it is respectfully **RECOMMENDED**:

That Ground Two of the motion to vacate, Doc. 1421, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this  *12th*  day of February, 2008.

*s/ A. KORNBLUM*
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**